Mulligan, J.
This case arose out of a high-speed collision between two motor vehicles in the westbound lane of Rte. 2 in Orange on the night of July 5, 1998. The driver of the eastbound Saab automobile which had crossed over into the westbound lane, Jason Ball, was killed. The driver of the other vehicle, the plaintiff, Cynthia Shepard, was seriously injured.
Although there was evidence that Jason Ball had consumed alcohol prior to the collision, and that he was driving at an excessive rate of speed at the time, much of the trial focused on the condition of the tires on Mr. Ball’s Saab, in that the Saab bore a motor vehicle inspection sticker issued in April 1998 by Ball’s employer, the defendant, Don Lorenz, Inc. (“Lorenz”). The juiy found Lorenz negligent relative to the inspection of Mr. Ball’s vehicle, but found that the negligence was not a cause of the plaintiffs damages. The juiy also found that the plaintiff was not negligent.
The motion for new trial involves the experts who testified at the trial and is based on the failure of the defendant to disclose the existence of “field notes” made by State Trooper Peter Noyes. At the trial, the juiy heard that the defendant’s experts made use of the notes and that the plaintiffs experts did not have those notes.
State Trooper Peter Noyes (“Noyes”), the accident reconstruction specialist assigned to investigate this fatal accident, arrived at the scene within an hour after it occurred. He surveyed the scene, observed the vehicles, and noted markings on the surface of the road. He wrote down his observations and made some calculations (“field notes”). Several months later, he submitted a thirteen-page report, which contains text, diagrams and calculations. In the final section of the report under the heading “Conclusions,” Noyes found that the Saab was being operated with defective equipment: tires with insufficient tread. He opined that the insufficient tread, and the high speed, coupled with the rain and wet roads, caused the operator to lose control and skid into the westbound lane. Noyes, because of an illness of some duration, could not attend the trial, but his accident investigation report was admitted in evidence.
At trial, Lt. Benanti, the commanding officer of the state police accident reconstruction unit, testified as an expert witness for Lorenz. During the course of his testimony he revealed that he had spoken to Noyes about the accident and that he had reviewed the field notes made by Noyes. This court had never previously encountered a similar or analogous situation. Here, Lt. Benanti, employed full-time as a supervisor of the state police accident reconstruction unit, also works in his off-duty time as an expert witness for hire in the field of accident reconstruction, and he was available for hire in this case, where an official accident reconstruction report was made and filed by a state police officer. Lt. Benanti’s sideline was particularly trou *813 bling in the context of this trial, not only because he was Noyes’s supervisor, but also because he had access to Noyes and his field notes and because his opinion differed in some respects from that of trooper Noyes, the author of the only official accident reconstruction report filed in connection with this accident.
On the specific issue of the field notes, the court agrees with plaintiffs assertion that defendant, Lorenz, should have disclosed the existence of the field notes in its responses during the discovery process; Requests #2 and #4 of Plaintiffs Request for Production of Documents, which fairly read encompass the field notes, required Lorenz to produce them. Also, interrogatory #4, which asked for the disclosure of the bases of the experts’ opinions should have prompted the disclosure of the field notes. And Lorenz should have revealed that Lt. Benanti reviewed the field notes in the Final Pretrial Conference Report.
At trial both the plaintiff and Lorenz contended that the report submitted by Noyes contained errors. The plaintiff claimed error in the initial point of impact, while the defendant’s experts questioned a mathematical calculation that Noyes made, his opinion of the speed of the Ball vehicle and whether the issue of tire tread contributed in causing the accident. Most important, the jury was left with the impression that the experts who testified for Lorenz were basing their testimony on superior information, because they had access to the vital field notes, while the plaintiffs experts did not.
The plaintiff argues and the court agrees, that the field notes would have conclusively established the size and brand of tires on the Ball vehicle. More specifically the notes establish that the badly worn rear tire was a “Gilslaved” brand tire. As the Gilslaved brand tire was part of the original equipment on Saab automobiles, the plaintiffs case that it was likely that the tire was on the Saab when it received the inspection sticker would have been substantially strengthened.
The field notes would also have been important in the cross examination of defendant’s expert, Allison, on the issue of the effect of mismatched tires on the maneuverability of the Saab. Finally, the notes were important on the momentum analysis conducted by Noyes.
The issue then becomes whether the failure to disclose the field notes, which should have been disclosed, so affected the plaintiffs affirmative presentation and cross examination of the defendant’s experts, such that she did not receive a fair trial on the issue of causation. This court must conduct a cautious survey of the whole case and determine whether it appears that a miscarriage of justice would result if a new trial were not granted. Evans v. Multicom Construction Corp., 6 Mass.App.Ct. 291, 295 (1978).
Causation was always the paramount issue relative to Lorenz. Certainly the field notes made immediately after the accident by a witness, who produced his report months after the accident, and who was not available at the trial, were pivotal evidence on the condition of the tires and whether their condition contributed to causing the Ball vehicle to enter into the plaintiffs lane of travel. Because the plaintiff did not have access to those field notes she did not receive a fair trial on the issue of causation. A decision not to grant a new trial would result in a miscarriage of justice.
Mass.R.Civ.P. 59(a) permits the court to grant a new trial on all or part of the issues. Here, the new trial shall be limited to the issue of the liability of Lorenz; the court does not disturb the verdict on damages.
The plaintiff argues strenuously that sanctions are warranted in this case. The plaintiff further argues that Lt. Benanti’s role in this case constituted a clear violation of G.L.c. 268A. Although I have stated that I find the involvement of Lt. Benanti in this trial both extraordinary and troubling, I am not prepared on the state of the record to rule that his activity violated G.L.c. 268A as the plaintiff urges.
As to sanctions, the defendant is entitled to an evidentiary hearing on whether sanctions are warranted and if warranted, the monetary amount of those sanctions. I will defer a hearing on the issue of sanctions until after the retrial of this case. A hearing will be conducted at that time, if the plaintiff continues to press the issue.
Order
The plaintiffs motion for a new trial is allowed on the issue of the liability of Don Lorenz, Inc. The motion for sanctions is deferred. •